THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>JIREH ASPHALT AND CONCRETE, INC. dba JIREH CONSTRUCTION SERVICES, a Washington corporation,<br><br>　　　　　Defendant. | NO. 2:21-cv-00365-JCC<br><br>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I.　　MOTION

Pursuant to Federal Rule of Civil Procedure 56, American Hallmark Insurance Company of Texas ("Hallmark") moves this Court for summary judgment on the following questions of law:

1.　　That Hallmark owes no duty to defend Jireh Asphalt and Concrete, Inc. dba Jireh Construction ("Jireh") in the underlying *Esplanade Condominium Association v. Transblue, LLC and Jireh Asphalt and Concrete, Inc.* lawsuit, King County Case No. 20-2-16847-5 ("the Underlying Lawsuit").

2.　　That Hallmark owes no duty to indemnify Jireh from any judgment in the Underlying Lawsuit.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 1 -
NO. 2:21-cv-00365-JCC

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

## II.   MEMORANDUM IN SUPPORT

A.   **Introduction.**

Hallmark's Motion for Summary Judgment concerns a straightforward issue regarding its duty to defend and duty to indemnify its insured, Jireh, for alleged property damage to the Esplanade Condominiums in Kirkland, WA. Through a combination of exclusions in the insurance policy Hallmark issued to Jireh ('the Policy"), there is no coverage available for the damages alleged by the Esplanade Condominiums against Jireh in the Underlying Lawsuit.

First, there is no coverage under the Policy's Commercial General Liability (CGL) coverage form for "property damage" occurring during Jireh's ongoing operations. This means that Hallmark owes no duty to defend or indemnify Jireh for any "property damage" that occurred before Jireh completed its work on the Esplanade project. Further, there is no coverage under the CGL coverage form for "property damage" occurring during Jireh's completed operations if that "property damage" arises out of Jireh's work on a "multi-unit residential project." Because the Esplanade Condominiums meet the Policy's definition of "multi-unit residential project", and none of the exceptions to the Multi-Unit Exclusion apply, there is no duty to defend or indemnify Jireh for any "property damage" that occurred after Jireh completed its work on the Esplanade Condominiums project. Finally, there is no coverage under the CGL coverage form for "property damage" to "impaired property" or property that has not been physically injured due to Jireh's faulty work. This means that Hallmark has no duty to defend or indemnify Jireh for Esplanade's damages incurred as a result of replacing Jireh's completed work that had not caused "property damage". Between the exclusions from coverage for Jireh's ongoing operations and its completed operations, and the Impaired Property Exclusion, there can be no duty to defend or duty to indemnify Jireh in the Underlying Lawsuit under the CGL coverage form.

/ / /

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 2 -
NO. 2:21-cv-00365-JCC

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

Similarly, there is no coverage under the Commercial Umbrella Liability coverage form. Coverage A of the Umbrella coverage form applies the same exclusions as the CGL coverage form.[1] For the same reasons that there is no duty to defend or indemnify Jireh under the CGL coverage form, there is also no duty to defend or indemnify Jireh under Coverage A of the Umbrella coverage form. Coverage B of the Umbrella coverage form does not apply to "injury" that is the subject of the underlying insurance or to "injury" that is excluded under the underlying insurance. Because the underlying insurance is the CGL coverage form and because the alleged "property damage" to the Esplanade is the subject of the CGL coverage form and is excluded from coverage by the CGL coverage form, there is no duty to defend or indemnify Jireh under the Umbrella coverage form.

As discussed in further detail below, Hallmark requests that this Court enter an Order granting summary judgment in Hallmark's favor concerning the absence of obligation to defend and indemnify Jireh in the Underlying Lawsuit.

**B.   Background.**

    **1.   The Hallmark Policy.**

Hallmark issued policy number 44-CL-000607121 to named insured Jireh Construction Services, which was in effect for consecutive annual policy periods from May 21, 2018 until the Policy was cancelled effective February 27, 2020. Declaration of David P. Rossmiller ("Rossmiller Decl.") ¶ 2, Exh. 1. The Policy contains, among other coverages, a Commercial General Liability (CGL) coverage form and a Commercial Umbrella Liability coverage form. *See id.*

/ / /

/ / /

/ / /

---

[1] An additional reason Coverage A provides no coverage in this matter is that it is excess insurance to the underlying policy, which has not been exhausted to date.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 3 -
NO. 2:21-cv-00365-JCC

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

The CGL coverage form contains the following exclusions:

> **j. Damage To Property**
>
> "Property damage" to:
>
> \* \* \*
>
> **(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
>
> **(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.
>
> \* \* \*
>
> Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".
>
> \* \* \*
>
> **m. Damage To Impaired Property Or Property Not Physically Injured**
>
> "Property damage" to "impaired property" or property that has not been physically injured, arising out of:
>
> **(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or
>
> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

*Id.* at pp. 68, 502.

The CGL coverage form also includes the following endorsement, CG 10 03 04 08:

> **EXCLUSION – MULTI-UNIT RESIDENTIAL CONSTRUCTION**
>
> This endorsement modifies insurance provided under the following:
>
> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**
>
> \* \* \*
>
> This insurance does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of:

/ / /

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. 2:21-cv-00365-JCC

- 4 -

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

1. "Your work" involving the exterior of any "multi-unit residential project" including the construction, maintenance, remodeling or repair of any new or existing structure. This includes but is not limited to roofing, siding, guttering, caulking, sealing, framing, foundation work, carpentry, door/window repair or installation, and masonry work.

2. Any of "your products" which will or have become a part of the real property of any "multi-unit residential project."

As respects the application of this exclusion to "bodily injury" and "property damage," this exclusion:

1. Only applies to the "products-completed operations hazard."

2. Does not apply to "your work" in connection with interior pre-construction, construction, post-construction, remodeling, maintenance or repair of any new or existing "multi-unit residential project" if the work is performed entirely within the confines of the inner walls of the building(s).

3. Does not apply to "your work" involving the exterior of the structure in connection with any plumbing, heating and air conditioning or electrical work.

4. Does not apply to "your work" involving external land and site improvements such a retaining walls, landscaping, excavation, grading of land or soil compaction on the grounds of any "multi-unit residential project."

For the purposes of this endorsement, the following definitions are added:

1. "Multi-unit residential project" means a condominium, townhouse, apartment or similar structure, used for the purpose of residential occupancy, which has either:

   a. More than four units in any one building; or

   b. More than four, four-unit buildings at any one "development."

   This does not include motels, hotels, nursing homes or assisted living facilities.

2. "Development" is defined as a building or group of buildings with the same ownership or constructed under a master plan regardless of the number of phases or length of time taken to complete construction.

*Id.* at p. 200, 636.

Coverage A of the Umbrella coverage form applies only if "the 'underlying insurance' also applies." *Id.* at p. 208. The Exclusions within Coverage A also state that "the exclusions applicable to the 'underlying insurance' also apply to this insurance." *Id.*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. 2:21-cv-00365-JCC
- 5 -

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

In relevant part, Coverage B of the Umbrella coverage form contains the following exclusions.

**2. Exclusions - Coverage B**

This insurance does not apply to:

a. "Injury" that is the subject of the insurance policies shown in the Schedule of Underlying Insurance in the Declarations.

\* \* \*

r. This insurance does not apply to any "injury" excluded under the insurance shown in the Schedule of Underlying Insurance.

*Id.* at pp. 209, 204, 642, 652.

The Schedule of Underlying Insurance for the 2018-2019 policy period is reproduced below. The Schedule for the 2019-2020 policy period also includes General Liability.

**AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS**
5420 LYNDON B JOHNSON FWY, STE 1100, DALLAS, TX 75240
**Commercial Umbrella Liability**
GENERAL CHANGE ENDORSEMENT

| POLICY NO: 44-CL-000607121-00/008 | EFFECTIVE DATE: 05/21/2018 |
|---|---|
| INSURED: JIREH CONSTRUCTION SERVICES | AGENT: DEGGINGER MCINTOSH & ASSOC INC |

**SCHEDULE OF UNDERLYING INSURANCE**

| TYPE OF INSURANCE | CARRIER / POLICY NUMBER / POLICY PERIOD | LIMITS OF INSURANCE | |
|---|---|---|---|
| General Liability | American Hallmark Insurance Company of Texas<br>44-CL-000607121-0<br>05/21/2018 to 05/21/2019 | $2,000,000<br>$2,000,000<br>$1,000,000 | GENERAL AGGREGATE<br>PROD/COMP OPS AGGREGATE<br>EACH OCCURRENCE |
| Commercial Auto | American Hallmark Insurance Company of Texas<br>44-CL-000607121-0<br>05/21/2018 to 05/21/2019 | $1,000,000 | EACH ACCIDENT / OCCURRENCE |

*Id.* at pp. 402, 722.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. 2:21-cv-00365-JCC
- 6 -

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

### 2. The Esplanade Condominiums landing and deck renovation project and the Underlying Lawsuit.

On or about November 18, 2020, The Esplanade Condominium Association filed a Complaint in King County Superior Court, case number 20-2-16847-5, which alleged claims for breach of contract, breach of warranty, violation of RCW 64.35.305 and negligence against Transblue, LLC and Jireh Asphalt and Concrete, Inc. for alleged property damage caused by a landing and deck repair project. Rossmiller Decl. ¶ 3, Exh. 2.

According to the Complaint, the Esplanade Condominiums are located at 12028 100th Avenue in Kirkland, Washington. *Id.* ¶¶ 1. The Complaint alleges that "on April 1, 2019, the Association and Transblue signed two contracts for purposes of performing repair work on decks and landings on the residential buildings located on the Association's condominium property." *Id.* ¶ 6. Transblue "hired Jireh as a subcontractor to perform work on external land or site improvements, including the decks and landings described in the Contracts." *Id.* ¶ 10. The Complaint does not distinguish between work done by Jireh and work done by Transblue – instead referring generally to Transblue and Jireh as Transblue. *See generally id.*

By early May 2019, a building consultant acting on behalf of the Association, began "calling out inferior workmanship, means and methods, and even materials to Transblue's and Jireh's crews." *Id.* ¶ 17. The problems referenced included:

> . . . rather than remove the vinyl deck membranes before applying the Gaco coating product, they were simply painting over them.
>
> Further, Transblue insisted that Gacodeck It Tape and Coating was equivalent to metal flashing when it is not.
>
> Transblue consistently failed to meet its own specifications to apply elastomeric coating to a minimum two inches up vertical walls and posts in accordance with construction standards and manufacturer's specifications.
>
> Transblue and Jireh failed to cure their poor workmanship and materials application procedures.

*Id.* ¶¶ 18-21.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 7 -
NO. 2:21-cv-00365-JCC

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

The Complaint also says that Transblue's and Jireh's work was substandard in ways including:

    a. Failure to remove vinyl deck membranes and painting over same;

    b. Failure to remove vinyl applied to walls;

    c. Failure to remove underlying gypcrete material and painting over same;

    d. Failure to properly install metal flashing so as to prevent water intrusion;

    e. Failure to utilize fiberglass mesh when applying metal flashing;

    f. Failure to perform basic prepping tasks such as priming galvanized nails and leaving painter's tape under the surface coating;

    g. Failure to prep surfaces properly leading to blistering, peeling, and general adhesion failures on the decks.

*Id.* ¶ 35.

The Complaint further alleges that Jireh "performed substandard work on the external land or site improvements, including decks and landings that needed to be removed, repaired, and redone. Such substandard work [allegedly] resulted in physical harm to tangible property and damages resulting therefrom, including loss of use of that property and damage within interior walls." *Id.* ¶ 34. Allegations in the Complaint also include that "the deck in Unit Q-301 was missing deck-to-wall flashing at the deck and around the door threshold. As a result, there was moisture intrusion into the building and specifically into Unit Q-201 below. This damage occurred within the interior walls of the unit. The cost of interior mitigation and repair is unknown at this time." *Id.* ¶ 43.

The Complaint alleges that the Association, on May 28, 2019, temporarily suspended the Project until Transblue "could provide proper flashing details for the deck to wall flashing and perimeter deck edge flashing installation." *Id.* ¶ 22. In response, it is alleged, Transblue provided a change order, dated June 2, 2019, to install "additional metal flashing to be added on the inside perimeter of any landings or decks that have not been substantially completed as of 5-31-2019."

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 8 -
NO. 2:21-cv-00365-JCC

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

*Id.* ¶ 23. The change order allegedly did not include installing metal flashing on previously completed decks or landings. *Id.* ¶ 24. The Association allegedly refused to sign the change order and terminated the Esplanade-Transblue contracts on June 21, 2019. *Id.* ¶¶ 27, 29.

At the time of termination, the Complaint alleges, Transblue had worked on six of 12 buildings in the Esplanade Condominiums and had worked on "32 out of 70 decks . . . and 5 out of 104 landings." *Id.* ¶¶ 32-33.

## C. Discussion

### 1. Standards for motions for summary judgment.

A court shall grant summary judgment to the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A "material" fact is one that, under the governing substantive law, is both relevant and might affect the outcome of the lawsuit. *Id.* at 248. If, under the governing law, there can be but one reasonable conclusion as to the verdict, the court must grant the motion. *Id.* at 248-51.

The interpretation of a contract is a legal question. *Tanner Elec. Coop. v. Puget Sound Power & Light*, 128 Wash.2d 656, 674 (1996). Insurance policies are contracts and are therefore interpreted as a matter of law. *Pemco Mut. Ins. Co. v. Utterback*, 91 Wash.App. 764, 767 (1998), *review denied,* 137 Wash.2d 1009 (1999).

### 2. Standards governing the duty to defend and the duty to indemnify.

In Washington, the duty to defend is broader than and separate from the duty to indemnify. *Hayden v. Mut. Of Enumclaw Ins. Co.*, 141 Wash.2d 55, 64 (2000). Initially, the duty to defend is analyzed by comparing the allegations of the complaint or claim to the terms of the policy. *Equilon Enters. LLC v. Great Am. Alliance Ins. Co.*, 132 Wash.App. 430, 435-36 (2006) ("An insurer has the duty to defend if the complaint or claim, construed liberally, alleges facts

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9 -
NO. 2:21-cv-00365-JCC

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

which, if proven, impose liability within the policy's coverage"). There are two exceptions to the rule that the analysis is limited to a comparison of the complaint to the policy. *Woo v. Fireman's Fund Ins. Co.*, 161 Wash.2d 43, 53 (2007). The first exception is when coverage is not clear from the face of the complaint or claim but coverage could exist. In that case, the insurer must investigate and give the insured the benefit of the doubt concerning the duty to defend. *Id.* The second exception is when either (1) the allegations in the complaint or claim are different than the facts known to the insurer, or (2) the allegations of the complaint or claim are ambiguous. *Id.* at 54.

If a liability insurer is uncertain of the duty to defend, the insurer may defend under a reservation of rights and seek a declaratory judgement that it has no duty to defend. *Id.* Once a declaratory judgment action is instituted, however, *the court* may rely on extrinsic evidence to determine whether the duty to defend is actually owed. *E.g., State Farm Fire & Cas. Co. v. Doucette*, 2016 WL 4793294, at *3 (W.D. Wash. 2016) ("Although Washington law prevents [an insurer] from using that extrinsic evidence to initially deny the duty to defend, it is preposterous to argue that the Court is precluded from relying on additional evidence to support a declaration of no duty to defend"); *W. Heritage Ins. Co. v. Rodriguez*, 2014 WL 4085073, at *3 (W.D. Wash. 2014) (". . . it is also well-established that, when a complaint is ambiguous, insurers may defend under a reservation of rights and then seek declaratory judgment after an investigation of the facts. In a declaratory judgment action the court may look at all evidence presented to determine if the allegations of the complaint are conceivably covered") (citing *Truck Ins. Exch. v. VanPort Homes*, 147 Wash.2d 751, 762-63 (2002)).

The duty to indemnify exists only if the insurance policy actually covers the insured's liability as determined by the finder of fact. *Xia v. ProBuilders Specialty Ins. Co.*, 188 Wash.2d 171, 182 (2017), *as modified* (2017), *reconsideration denied* (2017).

/ / /

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10 -
NO. 2:21-cv-00365-JCC

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

### 3. Hallmark has no duty to defend or duty to indemnify Jireh under the CGL coverage form.

Exclusions 2.j(5) and 2.j(6) of the CGL coverage form preclude the duty to defend for all "property damage" during Jireh's ongoing operations. In addition, the Multi-Unit Exclusion precludes coverage during the "products-completed operations hazard" – i.e. during Jireh's completed operations. Exclusion m. of the CGL coverage form further excludes from coverage damages caused by Jireh's faulty work that resulted in damage to "impaired property" or damage to property that has not been physically injured arising out of a defect or deficiency in Jireh's work or Jireh's failure to perform a contract according to its terms. Because the CGL coverage form does not provide coverage for the damages alleged by Esplanade during Jireh's ongoing or completed operations, and there is no coverage for damages caused by faulty work that resulted in "impaired property" or which did not result in physical damage, there is no duty to defend Jireh in the Underlying Lawsuit.

### a. Exclusions 2.j(5) and 2.j(6) preclude coverage for damages occurring during Jireh's ongoing operations.

Exclusions 2.j(5) and 2.j(6) are often called the ongoing operations exclusions. Exclusion j(5) precludes coverage for "property damage" to "[t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf <u>are performing operations</u>, if the 'property damage' arises out of those operations." (emphasis added). The phrase "are performing operations" is read in Washington to mean that the j(5) exclusion applies to ongoing operations only. Exclusion j(6) precludes coverage for "property damage" to "[t]hat particular part of any property that must be restored, repaired, or replaced because 'your work' was incorrectly performed on it." Exclusion j(6) does not apply to "property damage" included in the "products-completed operations hazard,"[2] meaning that j(6), like j(5), applies to ongoing operations only.

/ / /

---

[2] "Products-completed operations hazard" is defined by the Policy at pp. 78, 512.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 11 -
NO. 2:21-cv-00365-JCC

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

The phrase "that particular part" used in ongoing operations exclusions like j(5) and j(6) has been interpreted broadly by Washington courts, which have found that the exclusions preclude coverage for "property damage" resulting from the insured's work during ongoing operations, even if the "property damage" was not to the specific portion of the project on which the insured was working. For example, in *Vandivort Constr. Co. v. Seattle Tennis Club*, an insured was working near the property line of a tennis club. 11 Wash.App. 303, 308 (1974). When the insured caused an earth slide that resulted in "property damage" on both sides of the property line, the reach of a similar ongoing operations exclusion[3] was not limited to the property on which the insured was contracted to work. The Washington Court of Appeals, Division 1, found that because "[the insured] was performing operations on the property and the injury here for which damages are claimed arose out of those operations," an exclusion for damage to "that particular part" of property precluded coverage even though some damages were caused on property that was not the property upon which the insured's work was being performed. *Id.*

The Western District of Washington, in the *Metro Metals* case, provided a discussion detailing just how broad the ongoing operations exclusions are. *Alaska Nat'l Ins. Co. v. Metro Metals Nw., Inc.*, 2018 WL 4931601, at *4-*5 (W.D. Wash. 2018). One portion of that discussion summarizes a Washington Court of Appeals decision on the exclusions this way:

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[3] The exclusion in *Vandivort* stated that the policy "excludes coverage for damage to 'that particular part of any property, . . . upon which operations are being performed by . . . [the] insured . . .'" *Id.* at 308.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 12 -
NO. 2:21-cv-00365-JCC

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

*Canal Indemnity Co. v. Adair Homes, Inc.* similarly applied an ongoing operations exclusion to bar coverage for construction work that caused a mold problem. *Canal Indem. Co. v. Adair Homes, Inc.,* 737 F. Supp. 2d 1294, 1297 (W.D. Wash. 2010), *aff'd,* 445 F. App'x 938 (9th Cir. 2011). The relevant exclusion barred coverage for "property damage to [t]hat particular part of real property which you or any contractors or subcontractors . . . are performing operations if the property damage arise [sic] out of those operations . . ." *Id.* at 1301. The court noted that this type of policy language is "not limited to [the] portion of property that was subject to operations." *Id.* The court then held that the plain language of the exclusion barred coverage for property damage occurring during the construction. *Id.* at 1302.

*Metro Metals,* 2018 WL 4931601, at *5.

Here, the Complaint alleges that Esplanade suspended the Project on May 28, 2019 and terminated the contracts by June 21, 2019. At this point, Jireh was no longer working on the Project. Accordingly, Jireh's ongoing operations ended no later than June 21, 2019 when the contracts were officially terminated and very likely by May 28, 2019 when the Project was suspended.

Thus, the j(5) and j(6) exclusions preclude coverage for any "property damage" caused by Jireh's work during ongoing operations on the Esplanade Condominiums project, i.e., prior to June 21, 2019, whether the damage was to Jireh's work itself or to other property, such as the condominium units themselves.

### b. The Multi-Unit Exclusion precludes coverage for damages occurring during Jireh's completed operations.

Washington courts tend to apply Multi-Unit Exclusions based on the contractual language in the insurance policy. *American States Ins. Co. v. Delean's Tile and Marble, LLC*, 179 Wash.App. 27, 36-40 (2013) (applying a plain language analysis to a Multi-Unit Exclusion).

As quoted above, the Multi-Unit Exclusion applies to "your work"[4] involving the exterior of a "multi-unit residential complex." Jireh's work, as Transblue's subcontractor, is alleged in the Complaint to have consisted of "external land or site improvements, including the decks and

---

[4] "Your work" is defined by the Policy, which includes in relevant part "[w]ork or operations performed by you or on your behalf . . . ." Rossmiller Decl., ¶ 2, Exh. 1 at pp. 79, 513.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13 -
NO. 2:21-cv-00365-JCC

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

landings." Decks and landings, which are found on the exterior of buildings, necessarily involve exterior work. The damages in the Complaint arise from Jireh's work on the decks and landings. Therefore, the first part of the Exclusion is met.

The second part of the Exclusion is also met. As quoted above, multi-unit residential project is defined as a "condominium. . . used for the purpose of residential occupancy, which has either" "**a.** More than four units in any one building; or" "**b.** More than four, four-unit buildings at any one 'development.'" The Complaint states that the Esplanade Condominiums consist of at least 12 buildings and that there are at least 70 decks and 104 landings within the condominium complex – and probably that many across the 12 buildings contemplated as part of the project. The Complaint does not allege the specific number of units within each building of the condominium complex. These allegations standing alone do not allege whether there are more than four units in any of the Esplanade Condominium buildings or whether there are at least four units in more than four buildings. As discussed above, an insurer is not able to look to extrinsic evidence in its initial evaluation of the duty to defend unless that extrinsic evidence is in favor of coverage. *Woo*, 161 Wash.2d at 53.

Even though an insurer cannot use extrinsic evidence to deny the duty to defend, the Western District has concluded that a *court* can review extrinsic evidence to make a final determination on the duty to defend. Again, as cited above, the Western District Court stated in the *Doucette* case that "Although Washington law prevents [an insurer] from using that extrinsic evidence to initially deny the duty to defend, it is preposterous to argue that the Court is precluded from relying on additional evidence to support a declaration of no duty to defend." *Doucette,* 2016 WL 4793294, at *3. The Western District Court also stated, in the *Rodriguez* case cited above, that it is ". . . well-established that, when a complaint is ambiguous, insurers may defend under a reservation of rights and then seek declaratory judgment after an investigation of the facts. In a declaratory judgment action the court may look at all evidence

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 14 -
NO. 2:21-cv-00365-JCC

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

presented to determine if the allegations of the complaint are conceivably covered." *Rodriguez*, 2014 WL 4085073, at *3 (W.D. Wash. 2014).

According to the King County Department of Assessments, the Esplanade Condominiums are a residential condominium complex consisting of 19, 3-story buildings totaling 168 units. Rossmiller Decl., ¶ 4, Exh. 3. According to the King County Department of Assessments report, the Esplanade Condominiums contain the following number of buildings and units:

| Building | Number of Units |
|---|---|
| A | 9 |
| B | 9 |
| C | 9 |
| D | 9 |
| E | 9 |
| F | 9 |
| G | 9 |
| H | 9 |
| J | 9 |
| K | 12 |
| L | 12 |
| M | 12 |
| N | 6 |
| P | 6 |
| Q | 9 |
| R | 6 |
| S | 9 |
| T | 9 |
| U | 9 |

Based upon this extrinsic evidence, which the District Court is permitted to consider on the duty to defend analysis, the definition of "multi-unit residential project" unequivocally is met because: (1) every building within Transblue's (and thereby Jireh's) scope of work contained more than four units and (2) there are more than four, four-unit buildings within the Esplanade Condominiums. The Court doesn't need to reach the conclusion in considering the duty to defend regarding which building(s) Jireh actually worked on because even if Jireh had only

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. 2:21-cv-00365-JCC
- 15 -

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

worked on a single building in the Esplanade Condominiums, the Multi-Unit Exclusion is met. Since the Complaint alleges that Jireh completed at least some work on the Esplanade Condominiums project before the contracts were terminated, and the Esplanade Condominiums is a "multi-unit residential project", the Exclusion applies. The Court then looks to the remainder of the Multi-Unit Exclusion, which includes four exceptions:

> As respects the application of this exclusion to "bodily injury" and "property damage," this exclusion:
>
> **1.** Only applies to the "products-completed operations hazard."
>
> **2.** Does not apply to "your work" in connection with interior pre-construction, construction, post-construction, remodeling, maintenance or repair of any new or existing "multi-unit residential project" if the work is performed entirely within the confines of the inner walls of the building(s).
>
> **3.** Does not apply to "your work" involving the exterior of the structure in connection with any plumbing, heating and air conditioning or electrical work.
>
> **4.** Does not apply to "your work" involving external land and site improvements such as retaining walls, landscaping, excavation, grading of land or soil compaction on the grounds of any "multi-unit residential project."

Exception 1. above specifies that "property damage" is excluded only if it occurs during completed operations. The Complaint states that the work took place sometime between April 1, 2019, when the Association-Transblue contracts were signed, and June 21, 2019, when the Association-Transblue contracts were terminated. Therefore, the Multi-Unit Exclusion excludes from coverage damages occurring after June 21, 2019.[5]

Exceptions 2., 3. and 4. above are for work performed "entirely within the confines of the inner walls of the building(s);" for exterior work if connected with "plumbing, heating and air conditioning or electrical work;" and for exterior work involving land and site improvements, respectively. As the Complaint alleges, the work was performed on exterior portions of the property and therefore was *not* entirely interior, and so Exception 2. does not apply. Further, the

---

[5] As discussed in the preceding section, however, the j(5) and j(6) exclusions preclude coverage for damages during *ongoing* operations.

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16 -
NO. 2:21-cv-00365-JCC

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

work was not related to any of the excepted types of work listed in Exceptions 3. or 4.[6] and therefore they do not apply either.

### c. The Impaired Property Exclusion precludes coverage for damages due to faulty work that does not cause physical property damage.

Where the faulty work did not cause property damage but was merely defective, these damages are precluded by Exclusion m., the Impaired Property[7] Exclusion. *E.g., Truck Ins. Exch. v. Vanport Homes, Inc.*, 147 Wash.2d 751, 762 (2002) ("We find it unnecessary to fully analyze the impaired property exclusion and merely note that it excluded damages for loss of use. . . . the exclusion may apply to claimed damages that do not result in physical damage"). The Complaint alleges that much of the Association's loss is because the Association has had to completely redo Transblue's and Jireh's work on the decks/landings – not necessarily because that faulty work has actually caused any physical property damage. Because Exclusion m. precludes coverage for repair work and loss of use caused by faulty work that does not cause physical property damage, there is no duty to defend Jireh in response to those allegations in the Underlying Lawsuit.

### d. The effect of Exclusions 2.j(5), 2.j(6), the Multi-Unit Exclusion and the Impaired Property Exclusion.

To summarize, Exclusions 2.j(5) and 2.j(6) preclude coverage during Jireh's ongoing operations based on the allegations of the Complaint, but that the allegations of the Complaint do

---

[6] Hallmark notes that the Complaint alleges that "Transblue hired Jireh to perform work on external land or site improvements", which is the *exact* language of exception 4, but that allegation is followed by "including the decks and landings described in the Contracts." There is no dispute that the decks and landings of a multi-unit residential complex do not qualify as "external land or site improvements" under the Exclusion, which provides "retaining walls, landscaping, excavation, grading of land or soil compaction on the grounds" (i.e., work related to the ground/not the building envelope) as the type of work excepted from the Exclusion. The cursory allegation in the Complaint does not bring the Complaint's allegations within the scope of coverage under the CGL coverage form because the Complaint alleges damages only relating to work on exterior decks and landings and those are the only alleged damages for which Esplanade seeks recovery.

[7] "Impaired Property" is defined by the Policy at pp. 76, 510.

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT - 17 -
NO. 2:21-cv-00365-JCC

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

not state that the damages occurred entirely during ongoing operations. Because the Multi-Unit Exclusion applies to damages during completed operations, however, no duty to defend exists because damages necessarily must have occurred during ongoing operations and/or during the completed operations period, meaning the combination of the ongoing operations exclusions and the Multi-Unit Exclusion precludes any possibility of covered damages under the CGL coverage form. Additionally, the Impaired Property Exclusion, Exclusion m., precludes coverage for any potential "property damage" sought because of defective work or failure to fulfill contractual obligations. Therefore, Hallmark owes no duty to defend Jireh in the Underlying Lawsuit and summary judgment must be granted in Hallmark's favor.

    **4.**  **Hallmark has no duty to defend under the Umbrella coverage form.**

      **a.**  **Coverage A does not currently provide a duty to defend.**

Within the coverage grant of Coverage A, it is stated that Coverage A applies only if "the 'underlying insurance' also applies." The Exclusions within Coverage A also state that "the exclusions applicable to the 'underlying insurance' also apply to this insurance." Coverage A provides a duty to defend only once the CGL coverage form is exhausted, which has not occurred. Even if the limits of the CGL coverage form are exhausted, there would still be no duty to defend based upon exclusions in the CGL coverage form, which are discussed above.

Because the limits of the CGL coverage form have not been exhausted and the exclusions in the CGL coverage form otherwise preclude coverage under Coverage A, there is no duty to defend Jireh under Coverage A of the Umbrella coverage form.

      **b.**  **Exclusions a. and r. preclude the duty to defend under Coverage B in the Umbrella coverage form.**

The loss alleged in the Complaint is not covered by Coverage B of the Umbrella coverage form because of two exclusions. The first is Exclusion a., which precludes coverage for "'Injury' that is the subject of the insurance policies shown in the Schedule of Underlying

PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT   - 18 -
NO. 2:21-cv-00365-JCC

Betts
Patterson
Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

Insurance in the Declarations." As discussed above, the Schedule of Underlying Insurance includes the Hallmark CGL coverage form. Therefore, a plain reading of the policy language is that if there is an "injury" from the alleged construction defects, it is an injury that is the subject of the CGL coverage form and is excluded under Exclusion a.

The other Coverage B exclusion that is relevant is Exclusion r., which precludes coverage for any "injury" that is "excluded under the insurance shown in the Schedule of Underlying Insurance." For the reasons stated above, the "injury," which is defined in relevant part as "property damage," would be an "injury" excluded by the underlying CGL coverage form, meaning Exclusion r. precludes coverage under Coverage B for the "property damage."

**5.    Hallmark has no duty to indemnify Jireh under the Policy.**

For the reasons discussed above, because there is no duty to defend Jireh under the Policy, there is no duty to indemnify Jireh under the Policy either. Accordingly, this Court should enter an Order of summary judgment in Hallmark's favor regarding the absence of a duty to indemnify Jireh for the damages alleged in the damages alleged in the Underlying Lawsuit.

### III.    CONCLUSION

For the reasons discussed above, and for good cause showing, summary judgment in Hallmark's favor is appropriate, and this Court should enter an Order that Hallmark owes no duty to defend and no duty to indemnify Jireh in response to the allegations in the Underlying Lawsuit.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. 2:21-cv-00365-JCC
- 19 -

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045

1    DATED this 19th day of July, 2021.

                                              BETTS, PATTERSON & MINES, P.S.

                                              By  /s/ David P. Rossmiller
                                                  **David P. Rossmiller, WSBA No. 36491**
                                                  Email: drossmiller@bpmlaw.com
                                                  **Elissa M. Boyd, WSBA No. 50436**
                                                  Email: eboyd@bpmlaw.com
                                                  111 SW 5th Avenue, Suite 3650
                                                  Portland, OR 97204
                                                  Telephone:(503) 961-6338
                                                  Facsimile: (503) 961-6339

                                                  *Attorneys for Plaintiff American Hallmark*
                                                  *Insurance Company of Texas*

PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
NO. 2:21-cv-00365-JCC
- 20 -

Betts Patterson Mines
U.S. Bancorp Tower
111 SW Avenue
Suite 3650
Portland, OR 97204
(503) 961-6338

1784478/071921 1443/8354-0045