THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| AMERICAN HALLMARK INSURANCE COMPANY OF TEXAS,<br><br>Plaintiff,<br><br>v.<br><br>JIREH ASPHALT AND CONCRETE, INC.,<br><br>Defendants. | CASE NO. C21-0365-JCC<br><br>ORDER |

This matter comes before the Court on Plaintiff's unopposed motion for summary judgment (Dkt. No. 13). Having thoroughly considered the briefing and the relevant record, the Court finds oral argument unnecessary, and hereby GRANTS Plaintiff's motion for the reasons explained below.

I.   **BACKGROUND**

Plaintiff American Hallmark Insurance Company of Texas ("American Hallmark") insured Defendant Jireh Asphalt and Concrete Inc. ("Jireh") from May 21, 2018 through February 27, 2020. (Dkt. No. 13 at 3.) The policy contained commercial general liability coverage ("CGL Coverage") and commercial umbrella liability coverage ("Umbrella Coverage"). (*Id.*) The policy excludes from CGL Coverage property damage occurring during Defendant's ongoing operations. (*Id.* at 4.) The CGL Coverage also excludes property damage "involving the exterior of any 'multi-unit residential project.'" (*Id.* at 5.) These exclusions

likewise apply to Coverage A and Coverage B of the Umbrella Coverage. (*Id.* at 18–19.)

In April 2019, Jireh subcontracted to perform work on the decks and landings at the Esplanade Condominiums in Kirkland, Washington. (Dkt. Nos. 13 at 7, 14 at 2.) The Esplanade Condominium Association ("Esplanade") sued Jireh and others in state court[1] alleging Jireh "failed to cure their poor workmanship and materials application procedures" which forced Esplanade to "remove[], repair[], and redo[]" Jireh's allegedly substandard work. (Dkt. No. 13 at 7–8 (quoting Esplanade's Complaint).) Esplanade terminated its contract with Jireh on June 21, 2019. (*Id.* at 9.)

American Hallmark is defending Jireh against Esplanade's lawsuit under a reservation of rights. (Dkt. No. 19 at 2.) American Hallmark now moves for summary judgment on two issues: (1) that American Hallmark owes no duty to defend Jireh against Esplanade's lawsuit, and (2) that American Hallmark owes no duty to indemnify Jireh in that lawsuit. (Dkt. No. 13 at 1.) Jireh does not oppose American Hallmark's motion (Dkt. No. 15).

## II.  DISCUSSION

### A.  Jurisdiction

On September 10, 2021, the Court issued an Order to Show Cause why the case should not be dismissed for lack of jurisdiction (Dkt. No. 18). The parties jointly responded that Jireh's non-opposition was not an agreement on the merits and that they still dispute American Hallmark's rights and duties regarding Esplanade's lawsuit. (Dkt. No. 19.) Given the parties' disagreements on this issue, the Court FINDS that jurisdiction exists for it to consider the present motion.

### B.  Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[1] *Esplanade Condominium Association v. Transblue, LLC et al.*, King Cty. Super. Ct. Case No. 20-2-16847-5.

Civ. P. 56(a). Material facts are those that may affect the case's outcome. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if there is enough evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* at 49. At the summary-judgment stage, evidence must be viewed in the light most favorable to the nonmoving party, and all justifiable inferences must be drawn in the non-movant's favor. *See Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 960 (9th Cir. 2011).

Summary judgment is not proper merely because the opposing party fails to respond. *See* W.D. Wash. Local Civ. R. 7(b)(2); *Cristobal v. Siegel*, 26 F.3d 1488, 1495 n.4 (9th Cir. 1994) (unopposed motion may be granted only after the court determines there are no material issues of fact and judgment is appropriate as a matter of law). The burden on the nonmovant to respond arises only when the moving party has met its initial burden of production under Rule 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A court may, however, grant an unopposed motion for summary judgment if the movant's evidence is itself sufficient to support the motion and does not on its face reveal a genuine issue of material fact. *See Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). Moreover, if no factual showing is made in opposition to a motion for summary judgment, the district court has no obligation under Rule 56 "to scour the record in search of a genuine issue of triable fact." *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Interpreting an unambiguous insurance contract is a question of law. *See Quadrant Corp v. Am. States Ins. Co.*, 110 P.3d 773, 737 (Wash. 2005). In interpreting the insurance contract, courts are to consider the entire policy and apply a "fair, reasonable, and sensible construction as would be given by the average person purchasing insurance." *Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 325 (Wash. 2002). Courts are bound by the definitions provided in an insurance contract. *Id.*

### C. Insurance Coverage

Under Washington law, an insurer owes its insured two primary duties: the duty to

indemnify and the duty to defend. *See Am. Best Foods, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010). The duty to indemnify—that is, to pay the legal obligation of the insured for covered claims—exists only at the time liability is assessed, and only if the insurance policy covers the conduct giving rise to the liability. *Id.* The duty to defend, on the other hand, is much broader. It arises when an action within the terms of the policy is initiated against the insured. *Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 282 (Wash. 2002). The duty to defend obligates the insurer to represent the insured's interests throughout the lifecycle of the claims against it, including requiring the insurer to pursue a fair settlement of the claims. *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 669 (Wash. 2008).

An insurer has a duty to defend "if the insurance policy conceivably covers allegations" against the insured. *Am. Best Foods, Inc.*, 229 P.3d at 696; *see also Truck Ins. Exch.*, 58 P.3d at 282. Whether an insurance policy covers a claim depends on an "eight corners" test, that is, the four corners of the policy plus the four corners of the complaint against the insured. *Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017). If neither document raises an issue of fact or law that could conceivably result in coverage, then the insurer need not defend. *Id.* However, courts may look to extrinsic evidence to determine whether a duty to defend is owed. *Truck Ins. Exch.*, 58 P.3d at 282.

Under Jireh's insurance policy, American Hallmark has a general duty to defend Jireh against any lawsuit seeking damages arising from property damage that Jireh caused. (Dkt. No. 14-1 at 498.) American Hallmark also has a duty to indemnify Jireh for any "sums that the insured becomes legally obligated to pay as damages because of 'property damage' to which the insurance applies." (*Id.*) However, even drawing all reasonable inferences in Defendant's favor, Jireh's work at the Esplanade Condominiums falls within the various exclusions from coverage. As such, American Hallmark has no legal duty to defend or indemnify Jireh against those claims or sums, and summary judgment is appropriate.

1.  American Hallmark's Duties to Defend and Indemnify Under the CGL Coverage

American Hallmark asserts that under three exclusions to the CGL Coverage, it owes no duty to defend or indemnify Jireh against Esplanade's lawsuit. (*See* Dkt. No. 13 at 2.) First, American Hallmark asserts the policy excludes from coverage (1) property damage that resulted during Jireh's ongoing operations; (2) any damage occurring after Jireh completed its work if that work was on a qualifying multi-unit residential construction building; and (3) property damage to impaired property, i.e., "property that has not been physically injured due to Jireh's faulty work." (*Id.*)

First, CGL Coverage exclusion j.5 excludes from coverage property damage that arises while Jireh was still performing its operations. (*Id.* at 4.) Exclusion j.6 excludes from coverage "property that must be restored, repaired or replaced because '[Jireh's] work' was incorrectly performed on it." (*Id.*) That certainly describes Esplanade's state complaint against Jireh. Thus, these exclusions apply to property damage that Jireh is alleged to have caused before Esplanade terminated Jireh's contract on June 21, 2019.

American Hallmark thus owes Jireh no duty to defend or indemnify for damages caused by Jireh's work prior to June 21, 2019. This applies whether the damage was to Jireh's scope of work directly or to ancillary property, such as Unit Q-201. *See Canal Indemnity Co. v. Adair Homes Inc.*, 737 F. Supp. 2d 1294, 1297 (W.D. Wash. 2010), *aff'd*, 445 F. App'x. 938 (9th Cir. 2011) (citing *Vandivort Constr. Co. v. Seattle Tennis Club,* 522 P.2d 198 (Wash. Ct. App. 1974)).

Second, endorsement CG 10 03 04 08 excludes from coverage property damage arising out of Jireh's work "involving the exterior of any 'multi-unit residential project." (Dkt. No. 13 at 4–5.) The policy defines "multi-unit residential project" in relevant part, as a "condominium . . . which has . . . [(a)] More than four units in any one building; or [(b)] More than four, four-unit buildings at any one 'development.'" (*Id.*) This exclusion applies only to damage incurred after

Jireh completed its work. (*Id.*) Esplanade Condominiums is a 19-building, 168-unit condominium complex. (Dkt. No. 14 at 2.) *See also*, *Truck Ins. Exch.*, 58 P.3d 282. This plainly meets the policy's definition of a multi-unit residential project. Accordingly, American Hallmark owes Jireh no duty to defend or indemnify for Esplanade's claims of damages occurring after June 21, 2019.

Third, the "impaired property exclusion" excludes from coverage claimed damages based on loss of use, or repair work, resulting from Jireh's faulty work that did not actually damage the property. (Dkt. No. 13 at 4.) A significant portion of Esplanade's complaint appears to allege damages for repairing and duplicating Jireh's work on the decks and landings—not any physical property damage from Jireh's work. Because Esplanade's claims seek to recover costs of *preventing* physical damage that has not yet happened, rather than addressing damage that has, the impaired property exclusion applies. American Hallmark thus has no duty to defend or indemnify Jireh against those claims.

    2.    American Hallmark's Duties to Defend and Indemnify Under the Umbrella Coverage

Lastly, American Hallmark argues the Umbrella Coverage does not provide a duty to defend or indemnify Jireh against Esplanade's claims. (Dkt. No. 13 at 18.) The Court agrees.

Coverage A of the Umbrella Coverage applies only when the CGL Coverage also applies. Thus, the analysis above compels the conclusion that American Hallmark has no duty to defend or indemnify under Coverage A.

Coverage B of the Umbrella Coverage likewise does not apply because it excludes from coverage any injury excluded under the CGL Coverage. (*See* Dkt. No. 14-1 at 652.) Thus. Esplanade's claims are excluded from coverage for the same reasons discussed above. American Hallmark owes no duty to defend or indemnify Jireh against Esplanade's claims under the Umbrella Coverage.

## III.     CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment on its declaratory judgment claims (Dkt. No. 13) is GRANTED.

DATED this 8th day of October 2021.

John C. Coughenour
UNITED STATES DISTRICT JUDGE